## O. M. SCOTT & SONS COMPANY *v.*
## STATE TAX COMMISSION.

1. STATUTES — CONSTRUCTION — CORPORATIONS — TAX ASSESSMENT — DEFINITION OF PROPERTY.

   Construction of the general property tax law, requiring that all corporate property must be assessed to the corporation, requires reference to our former uniform sales act to determine who had title to the inventories in question on the tax date, as the general property tax law does not define the term "property" (CL 1948, §§ 211.11, 440.1 *et seq.*).

2. PROPERTY — TITLE — PERSONALTY — CORPORATIONS — UNIFORM SALES ACT.

   Deferred payment arrangement whereby plaintiff corporation's products are delivered to dealers in trust for the sole purpose of making sales to customers, and dealers do not pay for goods until they are sold *held*, not to be evidence of failure to transfer title, where the uniform sales act, which governed contracts for sale of goods on the tax date in question, indicated (1) that a contract for the sale of goods need not specify the price or the date for the payment of price, but may leave this element to be determined at a future time, and (2) that a postponement of the time of payment or option on the part of a buyer to return the goods instead of making payment, are both immaterial to passage of title for property in the goods (CL 1948, §§ 440.9, 440.19).

REFERENCES FOR POINTS IN HEADNOTES

[1]  50 Am Jur, Statutes §§ 217, 223, 234, 259, 339.
[2-5]  51 Am Jur, Taxation §§ 431-433.
[6]  5 Am Jur 2d, Appeal and Error § 1009.

3. Corporations—Transfer of Title to Goods—Uniform Trust Receipts Act.

Fact that dealers were obligated to surrender to plaintiff corporation, on notice, possession of all its products held in inventory, a right given the entruster of the goods upon default of the purchaser by our former uniform trust receipts act, *held*, not clearly evidence of an attempt by plaintiff to assert the rights of ownership of the goods in inventory of dealers, since the record does not indicate exact nature of the relationship between plaintiff and its wholly-owned subsidiary financing corporation, which was the entruster in the situation (CLS 1956, § 555.406).

4. Taxation—Evidence—Corporations—State Tax Commission—Personalty.

Failure of proof of a sale or transfer of the goods in question from the plaintiff to the subsidiary financing corporation in determination by the State tax commission with regard to issue of ownership of property sent by Ohio lawn and garden products manufacturer to Michigan retailers under a trust receipt financing arrangement and in possession of the retailers on tax day *held*, to be entirely irrelevant to the issue in taxpayer's appeal from State tax commission's assessment, since the former uniform trust receipts act indicated that no transfer of title to the party who acquires a security interest was contemplated under its provisions, and the lack of evidence of transfer of ownership to the financing company does not constitute evidence of the failure to make any transfer at all (CLS 1956, § 555-.401).

5. Same — Corporations — Assessments — Error — Personalty.

Assessment by defendant State tax commission of plaintiff corporation for personal property in inventory of its dealers for the reason that title to the property is retained by plaintiff until sale by dealers *held*, error, where defendant tax commission has relied upon facts which are not evidence of retained ownership in the plaintiff corporation.

6. Costs—Public Questions—Assessment of Personalty—Trust Receipt Financing.

No costs are allowed on appeal from State tax commission by out-of-State manufacturer of lawn and garden products as to assessment of property against it, where property subject to its trust receipt financing arrangement was in the possession of retailers in this State, a public question being involved (CL 1948, § 211.11; § 440.1 *et seq.*; CLS 1961, §§ 555.401, 555.406).

Appeal from Michigan State Tax Commission. Submitted Division 1 March 4, 1966, at Lansing. (Docket No. 1,179.) Decided October 11, 1966.

Assessment by City of Detroit, a municipal corporation, against O. M. Scott & Sons Company, an Ohio corporation, for personal property in the hands of dealers under a trust receipts financing arrangement. Appeal to Michigan State Tax Commission by taxpayer. Judgment for city. Taxpayer appealed. City of Detroit intervened as defendant. Reversed and remanded. (See 1 Mich App 184.) Michigan State Tax Commission again gave judgment for City of Detroit. O. M. Scott & Sons Company appeals, on leave granted. Reversed and assessment cancelled.

*Rothe, Marston, Mazey, Sachs & O'Connell (William M. Mazey,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William D. Dexter,* Assistant Attorney General, for defendant commission.

*Robert Reese,* Corporation Counsel, and *Irving S. Wolfe* and *Julius C. Pliskow,* Assistants Corporation Counsel, for intervenor defendant City.

McGregor, P. J. For the second time, the O. M. Scott & Sons Company contests before this Court upon leave granted the assessment against it by the appellee State tax commission for personal property taxes due on the inventories of Scott's lawn and garden products in the possession of the company's Detroit-based dealers on December 31, 1962. By the pen of Judge Fitzgerald, this Court, in *O. M.*

*Scott & Sons Company* v. *State Tax Commission* (1965), 1 Mich App 184, ordered the defendant commission to make a determination of facts with regard to the issue of ownership of the inventories in question. By order of July 26, 1965, the defendant tax commission reaffirmed its original assessment against the appellant O. M. Scott & Sons Company in an order which reads in part as follows:

"By reference to the exhibits, the testimony and other matters contained in the record of this case, the commission finds as follows:

"1. Petitioner is in the business of manufacturing and producing lawn seed, fertilizer, weed control, and other related lawn and garden products under its brand name Scotts. The products produced by petitioner are sold directly to retail dealers in various markets throughout the United States, including retail dealers in the city of Detroit.

"2. As to certain of its retail dealer customers, petitioner engages in trust receipt financing of the inventory of such products delivered to its dealers in the Detroit area 'to hold said products in trust for the sole purpose of making sales to consumers'.
\* \* \*

"3. Petitioner utilizes a subsidiary financing corporation, O. M. Scott Credit Corporation, to engage in such trust receipt transactions with certain of its dealers, causing its subsidiary credit corporation and certain dealers to enter into an agreement in the following form:

" 'TRUST RECEIPT.

" 'The undersigned dealer, as trustee, and entruster agree to engage in trust receipt financing of the acquisition by trustee of grass seed, fertilizer, weed controls, pest controls, applicators, mowers and other lawn and garden products, all bearing the brands and trade marks of the O. M. Scott & Sons Company. Entruster will direct said company to deliver said products from time to time as ordered by dealer.

" '(a)  Dealer agrees to hold said products in trust for the sole purpose of making sales to consumers functioning as a retailer and not as a wholesaler.

" '(b)  Dealer agrees to hold a sufficient proportion of the funds received from such sales for payment to entruster as billed.

" '(c)  Either party may terminate this trust receipt on notice.  In such event dealer will surrender to entruster his complete stock of Scotts products, proceeds thereof to be credited to dealer.'

"Such agreements and affidavits of renewal were filed by petitioner with the secretary of State of Michigan to notify third parties of the interest retained in the personal property in question.

"4. Although the trust receipt arrangement was executed between petitioner's subsidiary corporation, O. M. Scott Credit Corporation, as entruster, and a dealer, as trustee, no proof was introduced of a sale or transfer of the personal property in question from petitioner to the Credit Corporation.

"5. The dealer was not obligated for payment of the merchandise as a result of shipment to him.  The shipping invoices indicate that payment would be due when the property was sold.

"6. Petitioner's merchandise was sold on the basis of a physical inventory taken from time to time by its representatives, which physical inventory established a due date for payment of the merchandise.

"7. As provided for in the document entitled 'TRUST RECEIPT,' petitioner terminated the trust receipt relationship and asserted its right to pick up property in the possession of one of its dealers, Sam Pelione Hardware Company.

"8. The petitioner had not surrendered any ownership of the property as of tax day, except its physical possession.  At the time the merchandise was delivered by the petitioner to its dealers, the dealers were not obligated to pay for any of the property. Another event had to occur first, namely, the retail sale of the property by the dealer.  It thus appears that the arrangement was not a normal sale by the

terms of which title passed to the buyer and obligated him absolutely to pay for the items. It was instead a flexible arrangement designed to place the inventory in the possession of the dealers so they might dispose of the same at retail.

"REASON FOR DECISION.

"Inasmuch as (1) petitioner's dealers were not obligated to pay for the merchandise except when sold; (2) they were obligated to surrender, on notice, possession of the same to petitioner; and (3) they were required to permit petitioner's representatives to take a physical inventory to establish liability for payment, there appears sufficient ownership in petitioner to sustain the assessment in question.

"It is the considered judgment of this commission that the petitioner had sufficient incidents of ownership in the property to warrant the assessment in question, and that the property is subject to taxation by the city of Detroit and that the assessment was appropriately made against the petitioner, as owner."

In the determination of the validity of this assessment, a two-fold question presents itself. The first aspect is whether or not the factual findings herein are supported by the record of testimony and exhibits. The second aspect is, after the factual findings are substantiated by an examination of the record, whether or not these facts are actually legal evidence of retained ownership of the inventories in the appellant corporation.

While section 11 of the general property tax law (CL 1948, § 211.11 [Stat Ann 1960 Rev § 7.11]) requires that all corporate property must be assessed to the corporation, the statute does not define the term property. The corporate "property" must be that property which the corporation owns or to which the corporation has title. Since the tax law does not set standards for determining ownership of property, this Court must look to the other law

of the State in effect on the tax date to determine who had title to the inventories in question. (CL 1948, § 440.1 *et seq*. [Stat Ann 1959 Rev § 19.241 *et seq*.].) That law was Michigan's former uniform sales act, which was in effect until repealed by the uniform commercial code, PA 1962, No 174, effective January 1, 1964.

The provisions which determined the question of passage of title of goods were in part 2 of the former sales act, (CL 1948, § 440.17 *et seq*. [Stat Ann 1959 Rev § 19.257 *et seq*.]) to which the tax commission apparently gave no consideration.

Because of the great number of Scott's dealers within the city limits of Detroit, counsel for the appellant taxpayer and the city agreed to introduce into evidence the financial records of transactions with only two of the Scott dealers, the dealings with whom were considered to be typical. The evidence relied upon by the appellee tax commission in its finding that the plaintiff corporation retained legal ownership of the inventories in the hands of its dealers boiled down to three basic facts, which are evaluated serially herein.

The first fact relied upon by the tax commission is the method of payment arranged between the plaintiff corporation and the two typical dealers in Detroit. During 1962, these two dealers were not required to pay for the merchandise received from the plaintiff corporation until it was sold at retail. The amount of goods which each dealer had been able to dispose of was determined by a periodic inventory, a report of which was sent to the appellant corporation. The dealer would then be billed for the cost of the goods he had sold at retail during that period. The record substantiates such findings in regard to the two typical dealers, but there is evidence in the record that not all of the transactions with all of the dealers were conducted in this man-

ner. Even assuming that all of these sales by the Scott Company were made on this pay-as-you-sell basis, is this method of determining the date of payment evidence of the failure to transfer title in the goods from the plaintiff company to its retail dealers? This question must be answered by reference to the uniform sales act which governed contracts for sale of goods on the tax date in question. CL 1948, § 440.9 (Stat Ann 1959 Rev § 19.249) indicated that a contract for the sale of goods need not specify the price, let alone the date for the payment of price, but may leave this element to be determined at a future time. CL 1948, § 440.19 (Stat Ann 1959 Rev § 19.259) indicated that a postponement of the time of payment or option on the part of a buyer to return the goods instead of making payment are both immaterial to the passage of title for property in the goods. Therefore, this Court concludes that the deferred payment arrangements are not evidence of failure to transfer title.

The second alleged fact relied upon by the defendant tax commission is that the dealers were obligated to surrender to the appellant company, on notice, possession of all Scott's products held in inventory. The only piece of evidence in the record to support this conclusion is a letter sent from O. M. Scott & Sons Company to one of the so-called "typical" dealers, whose account was delinquent, which letter read as follows:

"It is with considerable regret that we part company with any dealer. However, the Scotts dealer appraisal committee has thoroughly considered the matter and has decided that your status as a Scotts dealer is to be terminated, effective as of this date.

"Accordingly, Scotts is now depending upon you to honor your agreement to deliver your inventory of Scotts products to us. Please refer to the at-

tached copy of the trust receipt agreement, especially paragraph (c) thereof, which says:

" 'Either party may terminate this trust receipt on notice. In such event dealer will surrender to entruster his complete stock of Scotts products, proceeds thereof to be credited to dealer.'

"A truck from the National Transit Company will be at your place of business next Monday, September 17, 1962, to pick up your entire inventory of Scotts products."

The tenor of this letter is an indication of intent to enforce the rights of the entruster in the goods upon default of the purchaser pursuant to section 6 of Michigan's former uniform trust receipts act (CLS 1956, § 555.406 [Stat Ann 1959 Rev § 19.535 (6)]). Since the record does not indicate the exact nature of the relationship, whether it be agency or otherwise, between O. M. Scott & Sons Company and its wholly-owned subsidiary financing corporation, O. M. Scott Credit Corporation, which was the entruster in this situation, it is not clear whether the letter in question indicated an attempt to assert the rights of ownership of the merchandise in the inventory of the delinquent dealer.

The third fact relied upon by the appellee tax commission is that there was no proof of a sale or transfer of the merchandise in question from the plaintiff corporation to the subsidiary financing corporation. Although this finding is substantiated by the record, yet this fact is entirely irrelevant to the issues in this case. The deciding factor here is whether or not title to the goods was transferred by the appellant corporation to its various dealers operating in the city of Detroit. Section 1 of the former uniform trust receipts act (CLS 1956, § 555.401 [Stat Ann 1959 Rev § 19.535(1)]) indicated that no transfer of title to the party who acquires the security interest was contemplated under its

provisions. Lack of evidence of transfer of ownership to the financing company does not constitute evidence of the failure to make any transfer at all.

Since the tax commission has relied upon facts which are not evidence of retained ownership in the plaintiff corporation, the order of the tax commission is reversed and the assessment cancelled. No costs are awarded because of the public nature of the questions involved.

HOLBROOK and QUINN, JJ., concurred.